Good morning. Good morning, Your Honor. I would like to reserve two minutes, please. Okay. You probably need to keep your voice up a bit. Use your outdoor voice, I guess. May it please the Court, my name is Jim Lopes, and as I represent Mr. Woolard, there's only one issue, really, in this case, and that's whether or not the false representations and the omissions were a product of negligence or whether that's clearly erroneous and whether they were intentional and or reckless. So what actual factual findings did the District Court make that were clearly erroneous? He said this was just negligence. Agent Chang was just negligence. Okay. And that was after hearing the agent's testimony. Yes. And the case which governs is the Perkins case, which involved the same District Court judge, where this Court reversed him and said this was clearly erroneous, this was intentional or reckless. Well, does that determination encompass a credibility call by the District Judge that we would not be in a position to make here at a distance? I think it normally does include a credibility determination, but this Court has said, like in Perkins, that our deference is not infinite. Right. And you have, in this case, an evidentiary hearing where, essentially, in the midst of the hearing, Agent Chang said, okay. They said, didn't you say there was nothing in her hands? And he said, I didn't say that. The affidavit said that. But he wrote the affidavit. And two seconds later, they said, wasn't there something in her hands? And she said, yes. He said, yes. And they said, doesn't this helicopter surveillance video show there's something in her hands? And he said, yes. It was a purse, right? I think it was a backpack. Okay. A purse, a suspected fentanyl pill was later found in Ms. Murphy's purse, which I suppose the purse and the backpack could have been one in the same, but it's not treated that way by the agent, by the agents. I think it's useful to look at what happened in Perkins and compare it here. In Perkins, the first person to look at Mr. Perkins' laptop was a Canadian border officer who looked at it, found some images, and said, ah, this is child porn. You're under arrest. I'm seizing this stuff. That was put by the U.S. law enforcement agent into his affidavit. What was not put into his affidavit was that the second Canadian law enforcement official to look at it, who was a constable with a name I can't pronounce, said, this is not child porn because it doesn't have any apparent sexual purpose of arousal. It just happens to be a naked child, but it's not child porn. And the charges against him in Canada were dropped. That was omitted from the agent's affidavit. This court said it's clearly erroneous. That's crazy. You don't leave that out unless you're trying to mislead the magistrate. They said the test for clearly erroneous in this situation is whether or not the agent can be seen to be selectively including things that bolster probable cause and selectively keeping things out that would undermine probable cause. Now, if you compare that in this case, there's all kinds of things that were omitted that were undermining probable cause.  One of the omissions, counsel, that Agent Chang, one of the things he omitted was including in his affidavit that the informant was in the car, right? I think I was partly wrong about that. He included, it said, CS is in the car, but earlier, at about 5 o'clock in the afternoon. Actually, not for the trip down to Arlington. That's what I was referring to. But he didn't omit that. It does say that he was dropped off earlier at 5 o'clock in the afternoon at the Village Inn. I think the importance of that is that he sat in the same seat under which the pills were found later. If I can for just a moment backtrack, this agent said at the Franks hearing, we were trying to rule out Ms. Murphy. Why? Because they have to rule out other. They can't just say, well, these pills might have come from Mr. Woolard's residence when there's so many other possibilities. They could have been planted there by Mr. Hecock. They could have been put there by Ms. Murphy after she got them from someplace down around the Safeway in Arlington. They could have been given to Mr. Thompson by somebody when he went to the bar or the convenience store or the barbershop. We don't know what happened there. And they could have been in Mr. Thompson's car for a week. They could have been, Mr. Thompson could have been driving. His girlfriend, Ms. Murphy, says he was taking me home to Lake Stevens, which is a little further south. She said, and this was omitted, I sometimes store pills for him. I sometimes buy pills for him. They could have been taking them to her house to store them at her house so that they won't be found at his house. What was left out is that Mr. Hecock was the roommate, the confidential informant was the roommate of Mr. Thompson, who's in a terrific position to plant drugs anywhere he wants and get anybody in trouble, and he's trying to ingratiate himself and he's trying to make money, all of which was left out. But here's Agent Cheng explaining that we are trying to rule her out, and we said we didn't see anything in her hands, the investigators didn't, when she was sitting on the ground when Thompson came back. And he's leaving out, five seconds later, yeah, five seconds later, agents saw that she had something in her hands. I left that out, but I didn't misrepresent anything. Really? This record also conclusively shows, and Cheng admitted at the evidentiary hearing, that no investigator saw anything in Mr. Thompson's hands when he came out of Mr. Woolard's house. How can it be relevant when it's Ms. Murphy and try to force the peg into the round hole of she didn't have anything in her hands, and that shows that she's not the source, but irrelevant when Mr. Thompson comes out of Mr. Woolard's home. That just doesn't make any sense at all. I could run through the numerous lies, I have a little time left, but the lies that Cheng told besides she didn't have anything in her hands were, one in particular was. Did the district judge make any finding that he was lying? No, he just said, I just find this is negligence. That's all it is. It doesn't exceed negligence. He didn't make written findings. He just said, I don't see anything here other than negligence. I want to focus on another lie. Well, I mean, it seems that in order for you to prevail, we would need to find that the things he left out as a matter of law would not be negligence. Because the clearly erroneous does involve, it seems that it's Judge Kuhnauer, I guess. No, it's Judge Martinez. Judge Martinez seems to have believed the agent. Seems to. And I don't, I'm not going to hear the agent. I don't get to look at the agent and decide whether I think the agent is telling the truth or not. I think the agent said some things about, well, I was moving fast and I was under stress of that and admitted that certain things were errors. So it seems like almost it would have to be a matter of law that the mistakes that he admitted to making would have to be more than negligence to me, to put me over the top here. I think you'd have to do the same thing the court did in Perkins. It was Judge Martinez in Perkins who said, I don't find this to be intentional or reckless. And this court said, well, that's clearly erroneous because of this pattern of selectivity. You can't have a person cherry-picking the things that make it like she had nothing in her hands, which wasn't even true to begin with, and leaving out. Well, but Perkins is the conclusion that something is child porn or it isn't child porn. No, I don't think that's true, Your Honor. Perkins is a conclusion that you found that he left out what the second Canadian agent did. Who said it wasn't child porn? Whether it was or wasn't, he left it out. It was for the magistrate to decide those things. But I think the holding is you left it out that was intentional or reckless. It's very clear the holding of Perkins is to find that this was not intentional or reckless is clearly erroneous. That's the holding. I have one minute left. Do you want to save time for rebuttal? Yes, but I want to point out one last thing before I sit down, and that is that the affidavit says, Hecox, the informant, told me that he saw when he was in another man's house, Bergstrom's house, that Bergstrom got a package from China. Why would he put that in to bolster the reliability of his informant? Because they could confirm that the package did come from China, but Hecox testified at the Franks hearing, I never said that, and the magistrate did not explore that. If I have any time left, I'll keep it. Okay. You have, like, 25 seconds, but I'll give you a minute for rebuttal because I'm so generous. Good morning, Your Honors. Michael Morgan again for the government. I just want to point out that there was, in fact, an express credibility finding in the district judge written order. It's on 1 ER 20, and when the court said, quote, To the contrary, the credible testimony of Special Agent Chang establishes that the omissions at issue were innocent or, at worst, negligent under the circumstances. So we have an express credibility finding. There's no ambiguity in the record here that the district court didn't say that he believed the agent. He heard the agent testify. The agent was cross-examined extensively, and the court made a finding and believed the agent, and that finding is entitled to deference. And there's no reason to second-guess that finding for a very important reason. Most, I'm not going to say all, but most of the omissions that are complained about involve evidence that Detective Chang said he did not know about at the time he drafted his affidavit. He did not have access to any of the confidential informant files that had information that purportedly showed The CI had a bit of a checkered past, and that wasn't included in the warrant, correct? His criminal history was included. His performance as a prior cooperator was not included, but that was because Agent Chang did not have access to those materials in the five-hour period that he drafted the warrant. Similarly, there's a lot of talk about what Ms. Murphy had in her hands, when she was picked up at the Safeway. The defense is relying on the videotape from the helicopter surveillance, which Agent Chang did not have access to at the time he drafted the warrant. So we're talking about the omission of information the agent did not know about when he drafted the warrant. Well, what about the evidence that Thompson made multiple stops and had two other persons in his vehicle when there was no evidence that Thompson carried out anything from Woolard's home? Do you know that? Are we talking about these stops before he went down to Woolard's home? Because those are temporally distinct. We know Thompson, he leaves his home, he goes to the barbershop, he stays at the barbershop for a bit, then he goes to a convenience store that's next door, and then he goes home. Yes, the agent knew about that. No, the agent did not include the stop at the convenience store. I would point out that at the hearing, this was not explored. The defense did not ask Agent Chang, why did you omit that? So they haven't developed a record, and if they haven't developed a record, you can't fault the district judge for not making any finding about whether that was an intentional or reckless omission, because it was not raised at the hearing. So the district court wasn't asked to consider that. It's also completely immaterial. The whole point, as I understand it, is that this would be an alternative source for the drugs. Well, the magistrate knew, one, that the informant had been in the car prior to after he left Thompson's home, and two, that the informant had gone to the barbershop where he could have gotten the drugs. I mean, yes, he could have gotten the drugs at the convenience store, but that's just another possible source of drugs. The magistrate knew that there were other potential sources and still found that there was probable cause. So that's not a material omission. And so I think that's the critical factor that distinguishes cases from Perkins. The problem in Perkins was that the agent was found to have not included information that he knew about when he drafted the warrant and that this court found should have been disclosed. That's just not the case here, at least not with respect to the omissions that counsel has talked about today here at argument. These rely on omissions that were based on evidence that the agent just simply didn't have access to. The district court credited the agent's explanation for why he didn't have access to that information. And there's no reason to second-guess that credibility finding, I mean, because the agent's explanations were completely plausible. CI files are kept secret. They're not given to routine agents. Some of the other CI files were from a whole totally different agency. There's no reason to think he could have gotten those files in the four hours he drafted, four to five hours he drafted the warrant. Again, the helicopter surveillance video was maintained by a completely separate investigative agency. Yes, it could have been accessed, but it wasn't. At best, that was negligent, as the district court found. But negligent investigation does not support Franks. That doesn't support a Franks remedy. At the outset of your argument, you put a pin and said, well, almost all of this he didn't know. But what did he know that was not included? The one fact that was not included, and I say not included, it was, I will say inartfully draft. My friend will say it was a lie. It was the fact that they lost sight of Thompson when he was driving for about 18 miles. That fact, Chang admitted at the hearing he knew about because he was part of the surveillance team. He did not include it in the affidavit, but he explained why. There just simply wasn't time, given the distance and the speed that they had to travel to catch up with him on I-5, that he could have gotten off, stopped, collected drugs, and got back on the highway, and they would have caught him at that same space. Like, if he had gotten off, we would have caught him much sooner. The district court, again, credited that explanation and said, yeah, that makes sense. Now, with the benefit of hindsight, would I have counseled the agent to put that in the warrant? Of course I would, because you would have just included that information, and it would have explained what happened. That would have been fine. It wasn't. It probably should have. But, again, this was negligent, as the district court found, because there was a reason. The agent didn't really think it was material. Now, we may disagree, but, again, that's negligence, and the district court found that that was, at best, negligent. So that's, like, the real key thing that I think that the record shows, that that was an omission that the agent did make of information he knew, but it was explained away credibly, and, again, there's no reason to second-guess that finding. The district court also found that any omissions by Chang were innocent. He specifically made that finding. He did. He specifically made that finding. And, again, it's, like, with respect to the omissions that were litigated at the hearing, Chang explained why they weren't included. I understand my friend may not find those explanations convincing, but it's the district court's opinion that's relevant here. The district court heard him testify and credited him, and on this record there's just no reason to think that those findings were clearly erroneous. And absent a reason to think that there was anything other than negligence, there just simply isn't a Frank's remedy in this case. I'm happy to talk about any other problems with the warrant that any of the panel has, but otherwise I think I've addressed the points that counsel has made. Apparently we don't have any additional questions. Thank you, Your Honor. Thank you. I'd ask you to affirm. Thank you for two minutes, Your Honor. Well, I only gave you one, but go ahead. Thank you for one minute, Your Honor. Yeah. I just want to go back out and read the holding sentence out of Perkins just to make it crystal clear. We hold that the district court clearly erred in finding that Agent Ensley did not omit relevant information with at least reckless disregard for whether the omissions would render the warrant application misleading. This case is worse than Perkins. I hear the government argue that Cheng said, I didn't know this, I didn't know that. I mean, there's some things he did know, which he just didn't tell the truth about. But they don't respond to the cases I cited that say you can't hide behind other officers. If he says, well, Detective Paz knew that. Detective, I can't remember, Hay knew that. I didn't know that. This court's precedent, de Leon, Chisholm, and you're citing Franks. You can't hide, if you're going to present an affidavit with all the information from the team, you can't say, oh, that's some other member of the team knew it, not mine. And in de Leon, this court held that, well, Sergeant Shea said he got his bad. He didn't get this information from his investigator, Juravich, and so he said some things that weren't true, and this court said, tough. That's not what Franks says. Thank you. All right. Thank you. This matter will stand submitted. I want to thank all counsel for being well prepared for argument and for how it was structured. I think that was helpful to the court. So this court will ‑‑ I'm in recess, but I think my colleagues will be back tomorrow at 9. Have a good day. Thank you. All rise. This court for this session stands adjourned.
judges: HAWKINS, CALLAHAN, BRESS